UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE GUADALUPE JAIMES,

        Petitioner,

                                  Case No.: 2:26-cv-11327

v.                                    Hon. Gershwin A. Drain


MAT KING, *St. Clair Sheriff*,
KEVIN RAYCRAFT, *Director of
U.S. Immigration and Customs
Enforcement, Detroit Field
Office*, MARKWAYNE
MULLIN, *Secretary of U.S.
Department of Homeland
Security*, TODD LYONS, *Acting
Director of U.S. Immigration and
Customs Enforcement*, TODD
BLANCHE, *U.S. Attorney
General*, and U.S.
DEPARTMENT OF
HOMELAND SECURITY,

        Respondents.
_____/

## **OPINION AND ORDER GRANTING THE PETITION FOR HABEAS CORPUS [ECF No. 1] AND DISMISSING ALL RESPONDENTS EXCEPT KEVIN RAYCRAFT**

Petitioner Jose Guadalupe Jaimes, a citizen of Mexico, is in the custody of

Immigration and Customs Enforcement ("ICE") at the St. Clair County Jail in Port

Huron, Michigan. Petitioner argues that he has not received a constitutionally

adequate bond hearing. Presently before the Court is Petitioner's Petition for Habeas

1

Corpus seeking immediate release or a new bond hearing. Respondents oppose the Petition.

The Court concludes a hearing will not aid in the disposition of the Petition and will determine the outcome on the briefs. E.D. Mich. L.R. 7.2(f)(2). For the reasons that follow, the Petition for Habeas Corpus is GRANTED. Petitioner shall receive a new constitutionally adequate bond hearing according to the directions at the end of this Order. Furthermore, all Respondents except for Kevin Raycraft, Director of U.S. Immigration and Customs Enforcement, Detroit Field Office, are dismissed as improperly joined.

## I.    BACKGROUND

Petitioner Jose Guadalupe Jaimes is a citizen of Mexico. ECF No. 8-3, PageID.97. Petitioner claims that he entered the United States in 2001 without inspection, admission, or parole. ECF No. 1, PageID.2. In 2011, immigration officials encountered Petitioner and began removal proceedings against him for being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i).[1] ECF No. 8-3, PageID.97. Petitioner applied for asylum, withholding of removal, and cancellation of removal, which were denied by an immigration judge on May 22, 2014, and Petitioner was ordered removed from the United States. *See* ECF No. 8-4.  Petitioner appealed the

---

[1] This provision states that a noncitizen is inadmissible if he enters the United States without admission or parole.

ruling with the Board of Immigration Appeals ("BIA"). Before the BIA ruled on the appeal, however, Petitioner and the Department of Homeland Security ("DHS") jointly moved to administratively close the appeal until further notice from either one of the parties. ECF No. 7, PageID.36; ECF No. 8-5, PageID.127.

Thus, Petitioner has continued to live in the United States. Petitioner is married and lives in Trenton, Michigan. ECF No. 8-9, PageID.144. He has five children and two grandchildren, who are all U.S. citizens. *Id.* Petitioner's mother is a lawful permanent resident. *Id.* Petitioner is the sole breadwinner of the family and has his own painting business, Lupe's Professional Painting. *Id.*

On January 29, 2025, Petitioner attempted to purchase a Steyr M9-A2 pistol. ECF No. 8-6, PageID.129. To make such a purchase, Petitioner was required to fill out and sign an ATF form to verify that he was eligible to own the firearm. *See id.* Of relevance here, that form asked Petitioner whether he was an alien here illegally or unlawfully. *Id.* Petitioner answered "No" to that question. *Id.* The form further informed Petitioner in bold letters that a person who is here illegally or unlawfully is prohibited from receiving or possessing a firearm. *Id.*; *see also* 18 U.S.C. § 922(g)(5). In addition, the form informed Petitioner that making false statements or representations with respect to the firearm transaction is a crime punishable as a felony. ECF No. 8-6, PageID.129. The sale of the pistol was ultimately rejected. *See generally* ECF No. 8-6. Petitioner later claimed that he did not fully understand the

form because it was not in Spanish and did not understand that he was in the country illegally (he thought his work authorization gave him legal status). ECF No. 8-11, PageID.150; ECF No. 7, PageID.37.

On March 5, 2025, ICE agents conducted an operation to arrest Petitioner. ECF No. 8-7, PageID.137. After Petitioner dropped his son off at school, three to five unmarked ICE vehicles surrounded Petitioner's van, and agents approached Petitioner with their guns drawn. ECF No. 7, PageID.37. They arrested Petitioner on probable cause that he was not in possession of valid immigration documents. Notably, they did not have a warrant for Petitioner's arrest. ECF No. 8-7, PageID.137. The same day, DHS issued a custody determination that Petitioner was to remain detained during the pendency of his removal proceedings. ECF No. 8-8, PageID.140. Petitioner requested that this custody determination be reviewed by an immigration judge. *Id.*

On March 25, 2025, Immigration Judge Mark Jebson ("IJ Jebson") held a bond hearing at which he issued a form order denying Petitioner bond due to "danger."  ECF No. 8-10, PageID.147. Petitioner appealed the bond order, and pursuant to immigration court rules, IJ Jebson issued a written bond opinion stating that he denied bond because Petitioner "failed to show that he is not a danger to the community." ECF No. 8-11, PageID.150. IJ Jebson explained that he did not find Petitioner credible when Petitioner claimed that he did not understand the ATF form

4

and was unaware that he was in the U.S. illegally. IJ Jebson was concerned about Petitioner's attempt to acquire a deadly weapon. *Id.* Accordingly, Petitioner "has failed to carry his burden of showing that he is not a danger to the community." *Id.*

Over the last year, DHS has filed several motions with the BIA requesting that Petitioner's original appeal of the order of removal—from 2014—be re-calendared so that Petitioner's removal can be finalized. *See* ECF No. 7-1, PageID.47. Until that appeal is re-calendared and adjudicated, Petitioner's order of removal is not administratively final, and Petitioner cannot be removed. ECF No. 8, PageID.74. BIA has not moved on re-calendaring the appeal. In the meantime, Petitioner has been incarcerated for over sixteen months—since he was arrested by ICE on March 5, 2025.

Petitioner filed this Petition for Habeas Corpus on April 22, 2026, arguing that his detention without an "adequate" bond hearing violated the Fifth Amendment Due Process Clause. *See* ECF No. 1, PageID.5–6. The Court found the Petition (and Respondents' Response to the Petition) to be deficient and ordered the parties to submit supplemental briefing on the legal issues. *See* ECF No. 6.

Petitioner expands on his legal position in his supplemental brief.[2] In the brief, Petitioner claims that the bond hearing he received violated his due process rights.

---

[2] In addition, Plaintiff offers several other arguments in support of his request for habeas corpus, which are all meritless and easily discarded. The Court briefly addresses them at the end of this Opinion.

Petitioner argues that due process requires the Government to bear the burden of establishing grounds for a noncitizen's detention at a bond hearing, and that the Government must meet this burden by clear and convincing evidence. ECF No. 7, PageID.42. Further, Petitioner claims that his detention has become unreasonably prolonged. *Id.* at PageID.43–44.

In their supplemental brief, Respondents reject Petitioner's arguments. Respondents argue that Petitioner received all the process he was due at his bond hearing because Petitioner's due process rights are coextensive with immigration procedures provided by Congress; and in any event, Petitioner fails the *Mathews v. Eldridge* balancing test and fails to show prejudice. ECF No. 8, PageID.83–85, 88. Respondents ask the Court to reject the argument that the Government should bear the burden of proof by clear and convincing evidence at bond hearings. *Id.* at PageID.85.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2241, a district court has the "authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004). "Section 2241 confers jurisdiction to hear habeas corpus challenges to the legality of a noncitizen's detention." *Lopez v. Olson*, --- F. Supp. 3d ---, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *2 (W.D. Ky. Nov. 18, 2025). "Although

the Court 'may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.'" *Id.* (quoting *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020)).

### III.   DISCUSSION

**A. Due Process: Burden of Proof at Bond Hearings**

Petitioner argues that under the Due Process Clause of the Fifth Amendment, the Government is required to bear the burden of proving by clear and convincing evidence that Petitioner is a danger to society and should remain incarcerated pending removal. Consistent with BIA precedent, IJ Jebson put the burden of proof on Petitioner at the bond hearing. ECF No. 8-11, PageID.149–50. Accordingly, Petitioner argues that his due process rights were violated.

The Due Process Clause of the Fifth Amendment forbids the Government from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Indeed, "the Due Process Clause

applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "So, detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *J.G.G.*, 604 U.S. at 673 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

To establish a violation of the Due Process Clause, a noncitizen must establish that he "has been deprived of a life, liberty, or property interest sufficient to trigger the protection of the Due Process Clause in the first place." *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020). Then a court must determine whether a violation occurred by considering the three factors the Supreme Court set out in *Mathews v. Eldridge*: "(1) the private interest affected, (2) the risk of erroneous deprivation of that private interest and the value of any additional safeguards, and (3) the government's interest, including the fiscal and administrative burden the additional safeguards would impose." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)).[3]

_____

[3] The Government notes that "[i]n the immigration context, the Supreme Court does not typically consider due process challenges under the *Mathews v. Eldridge* balancing test." ECF No. 8, PageID.83. However, the Supreme Court has never precluded consideration of the *Mathews* factors. And the Sixth Circuit has specifically stated in an immigration-related due process case that "[i]f this court has previously addressed the due-process claim, then we are bound by precedent; if the claim is an issue of first impression, then we generally apply the three-factor test the Supreme Court set out in *Mathews v. Eldridge*." *Silvestre-Gregorio*, 983 F.3d at 852. As the Court explains below, the specific issue in this case is a matter of first

In addition, "proof of prejudice is necessary to establish a due process violation in an immigration hearing." *Martini v. Mukasey*, 314 F. App'x 819, 823 (6th Cir. 2008) (quoting *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004)). Thus, the due process analysis is a "two-step inquiry: first, whether there was a defect in the removal proceeding; and second, whether the alien was prejudiced because of it." *Id.*

a. Step One: Burden of Proof

Under 8 U.S.C. § 1226(a), a noncitizen "may be arrested and detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). Until the final decision on removal, a noncitizen who is detained under § 1226(a) may continue to be detained or may be released on bond or conditional parole. *Id.*(a)(2). Pursuant to the regulations, an ICE officer makes the initial custody determination about whether the noncitizen will be detained or released on bond. *See* 8 C.F.R. § 236.1(c)(8). Thereafter, the noncitizen may request a bond hearing before an immigration judge. *Id.*(d)(1). If the noncitizen is unsatisfied with the immigration judge's decision, he may file an appeal with the BIA. *Id.*(d)(3). Importantly, both § 1226(a) and the regulations are "silent as to what burden of proof applies in bond hearings and who bears that burden." *Soto-Medina v. Lynch*, 817 F.

---

impression because the Sixth Circuit has not ruled on it. Accordingly, the *Mathews* factors are appropriate to consider.

9

Supp. 3d 612, 621 (W.D. Mich. 2026) (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021)).

"Until the early 1990s, the Attorney General exercised his discretion with a presumption in favor of liberty during the pendency of removal proceedings. This presumption was repeatedly affirmed by the [BIA]." *Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020) (citing *Matter of Patel*, 15 I. & N. Dec. 666, 666 (B.I.A. 1976) ("An alien generally is not and should not be detained… except on a finding that he is a threat to the national security or that he is a poor bail risk.")). This position changed after the 1996 enactment of the Illegal Immigration Reform and Immigrant Responsibility Act. *See Soto-Medina*, 817 F. Supp. 3d at 621. Although the Act did not alter the discretionary detention scheme under § 1226(a) except to raise the minimum bond amount from $500 to $1,500, *see Hernandez-Lara*, 10 F.4th at 27, the Immigration and Naturalization Service promulgated new regulations which placed the burden on the *noncitizen* to prove to the arresting officer that he "would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

Although this regulation "applied only to the custody determination by the arresting officer, the BIA soon adopted that standard for section 1226(a) bond hearings before an IJ[.]" *Hernandez-Lara*, 10 F.4th at 27 (citing *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112 (B.I.A. 1999)). Accordingly, noncitizens are now

10

required to prove to the immigration judge at their bond hearings that they are not a danger to society or a flight risk. In contrast, "under the current BIA precedent, the Government need not show anything to justify incarceration for the pendency of removal proceedings, no matter the length of those proceedings." *Velasco Lopez*, 978 F.3d at 849.

In *Jennings v. Rodriguez*, the Supreme Court ruled that the plain text of § 1226(a) does not *statutorily* require the Government to prove a noncitizen's dangerousness or flight risk by clear and convincing evidence every six months that the noncitizen is in detention. 583 U.S. 281, 306 (2018). However, the Supreme Court left open for another day whether the Due Process Clause puts any such constraints on the Government. *Id.* at 312. A circuit split on the constitutionality of the burden of proof has arisen in the face of this gap. *Compare Hernandez-Lara*, 10 F.4th at 39–40 (finding that the Government bears the burden of proving dangerousness by clear and convincing evidence and flight risk by preponderance of the evidence); *Velasco Lopez*, 978 F.3d at 855–56 (same); *with Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (finding that it does not violate the Due Process Clause to place the burden of proof on the noncitizen); *Borbot v. Warden Hudson*

11

*Cnty. Corr. Facility*, 906 F.3d 274, 280 (3d Cir. 2018) (same); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022) (same).[4]

The Sixth Circuit has not weighed in on the debate. However, district courts within the Sixth Circuit overwhelmingly find that under the Due Process Clause, the Government bears the burden to prove by clear and convincing evidence that the

---

[4] Notably, these cases do not come to identical conclusions one way or the other. In *Hernandez-Lara*, the First Circuit held that the Government bears the burden of proof in *all* bond hearings under § 1226(a), and that the burden of proof varies for dangerousness and risk of flight. *See* 10 F.4th at 39; *see also Brito v. Garland*, 22 F.4th 240, 246 (1st Cir. 2021) ("In [*Hernandez-Lara*], we held that the minimum requirements of due process dictate that, in order to detain a person under section 1226(a)… the government must either prove by clear and convincing evidence that the person is a danger to the community, or prove by a preponderance of the evidence that the person is a flight risk."). Conversely, in *Velasco Lopez*, the Second Circuit's conclusion was not that the Government must *always* bear the burden of proof, but that the detainee's detention had become unduly prolonged after fifteen months, which required the Government to hold a bond hearing at which it bore the burden of proof by clear and convincing evidence. *See* 978 F.3d at 846.

In *Miranda*, the Fourth Circuit held that the petitioners were unlikely to succeed on the merits of their request for a preliminary injunction because the procedures currently employed under § 1226(a)—including the burden of proof— do not violate the Due Process Clause. *See* 34 F.4th at 365. *Borbot* is somewhat distinguishable. There, the petitioner did not challenge the adequacy of his initial bond hearing (in contrast to Petitioner here). Instead, he argued in line with *Velasco Lopez* that he was entitled to an additional bond hearing at which the Government bore the burden of proof because his detention had become prolonged. *See* 906 F.3d at 277. The Third Circuit rejected this argument facially and as applied to Petitioner, but left open the possibility that under some circumstances a new bond hearing may be constitutionally required. *Id.* at 279–80. In *Rodriguez Diaz*, the Ninth Circuit rejected the argument that the Government is required under the Due Process Clause to bear the burden of proof at the initial bond hearing, but left open the possibility that an as-applied constitutional challenge could be raised in that regard. 53 F.4th at 1211–12, 1213.

noncitizen is a danger to society or a flight risk. *See Castaneda-Castano v. Daley*, No. 26-145-DLB, 2026 WL 1223095, at *7 (E.D. Ky. May 4, 2026) ("Although the Sixth Circuit has yet to weigh in on the issue… numerous district courts in this Circuit and around the country have concluded that the burden of proving that a § 1226(a) detainee is a danger or flight risk should rest with the government.").

The leading case is *Soto-Medina v. Lynch.* In *Soto-Medina*, the Western District of Michigan analogized immigration detention bond proceedings—which are civil, not criminal—to civil commitment proceedings, at which the Supreme Court has repeatedly held that the Government bears the burden of proving the need for detention by clear and convincing evidence. *See* 817 F. Supp. 3d at 623 (collecting cases). Thereafter, the *Soto-Medina* court analyzed the issue under the *Mathews v. Eldridge* due process framework. *Id.* at 624 (citing *Mathews*, 424 U.S. at 335). Relying extensively on the reasoning of the *Hernandez-Lara* decision from the First Circuit and the *Velasco Lopez* decision from the Second Circuit, the court concluded that the balancing of the factors requires the Government to prove dangerousness and risk of flight by clear and convincing evidence. *Id.* at 627, 629.[5]

---

[5] *Soto-Medina* departed from *Hernandez-Lara*'s reasoning when it came to the applicable standard to be applied. In *Hernandez-Lara*, the First Circuit held that clear and convincing evidence applies to the dangerousness determination and preponderance of the evidence applies to the flight risk determination. 10 F.4th at 40. *Soto-Medina* agreed instead with *Velasco Lopez*, which applied the clear and convincing evidence standard across the board. 817 F. Supp. 3d at 627–28 (citing *Velasco Lopez*, 978 F.3d at 856–57). The court noted that the Government has the

Other district courts in this Circuit have followed suit. *See, e.g.*, *Graterol Guedez v. Raycraft*, No. 26-11285, 2026 WL 1696650, at *6 (E.D. Mich. June 11, 2026) (following *Soto-Medina*); *Ba v. Raycraft*, No. 26-10838, 2026 WL 1213803, at *7 (E.D. Mich. May 4, 2026) (same); *Perez-Perez v. Raycraft*, No. 26-10533, 2026 WL 1121930, at *7 (E.D. Mich. Apr. 24, 2026) (same); *Castaneda-Castano*, 2026 WL 1223095, at *9 (same); *Rodriguez v. Greene*, No. 4:26-cv-0333, 2026 WL 574961, at *15 (N.D. Ohio Mar. 2, 2026) (same). In fact, the trend to require the Government to carry the burden of proof by clear and convincing evidence "go[es] back several years and predat[es] current DHS Policy." *Rodriguez*, 2026 WL 574961, at *14; *see, e.g.*, *M.T.B. v. Byers*, No. 2:24-027-DCR, 2024 WL 3881843, at *5 (E.D. Ky. Aug. 20, 2024); *Diaz-Calderon v. Barr*, No. 2:20-CV-11235-TGB, 2020 WL 5645191, at *17 (E.D. Mich. Sept. 22, 2020).

Furthermore, although the Sixth Circuit has not weighed in on the specific issue currently before the Court, it *has* cited *Hernandez-Lara* and *Velasco Lopez* favorably in its due process analysis in a recent immigration-related case, *Lopez-*

---

ability to prove both elements by clear and convincing evidence easily, while noncitizens face many impediments to supporting their arguments (such as language barriers, inability to gather evidence, etc.) The court concluded that the weight and gravity of a noncitizen's liberty interest is so strong that due process requires the Government to justify confinement "by proof more substantial than a mere preponderance of the evidence." *Id.* at 629 (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)).

*Campos v. Raycraft*, 175 F.4th 713, 732–33 (6th Cir. 2026).[6] Relying on *Hernandez-Lara* and *Velasco Lopez*, the Sixth Circuit openly acknowledged that "[w]hen immigration detention becomes needlessly prolonged and appears to no longer effectuate the regulatory goals of civil immigration detention, courts routinely hold that the Due Process Clause requires an individualized bond hearing to justify a noncitizen's continued detention." *Id.* at 732–33. The Sixth Circuit further noted that "detention pending removal proceedings can become unduly prolonged and indefinite because it can take months or even years for the removal proceedings to resolve." *Id.* at 733 n.3. Ultimately, recognizing that noncitizens "have a liberty interest to be free from detention" which is "shared by citizens and noncitizens alike," the Sixth Circuit held that "detention without an individualized bond hearing can become constitutionally impermissible, even if the detention has a theoretical end point." *Id.* at 734.

Considering the foregoing legal background, and for the reasons explained below, the Court follows this "growing chorus" of case law and concludes that the Due Process Clause requires the Government to bear the burden of proving by clear and convincing evidence that Petitioner is a danger to society or a flight risk.

---

[6] In *Lopez-Campos*, the Sixth Circuit ruled that certain noncitizens were improperly detained under § 1225(b)(2) instead of § 1226(a), and that detention without an opportunity for release on bond violated their due process rights. 175 F.4th at 719.

15

*Castaneda-Castano*, 2026 WL 1223095, at *9 (quoting *Miranda*, 34 F.4th at 378 (Urbanski, J., concurring in part)).

"The function of a standard of proof, as that concept is embodied in the Due Process Clause… is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" *Addington v. Texas*, 441 U.S. 418, 423 (1979) (quoting *In re Winship*, 397 U.S. 358, 370 (1970)). "The standard serves to allocate the risk of error between the litigants and indicate the relative importance attached to the ultimate decision." *Id.*

As the Supreme Court has stated, "due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake… are both particularly important and more substantial than mere loss of money." *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 756 (1982)) (quotation marks omitted). Under this Nation's jurisprudence, a person's right to be free from detention and bodily restraint is one of the most fundamental and important individual interests. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause."). Accordingly, the Supreme Court "repeatedly has recognized that civil commitment for *any* purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington*,

441 U.S. at 425 (collecting cases) (emphasis added). As a result, "[t]he Supreme Court has consistently held the Government to a standard of proof higher than a preponderance of the evidence where liberty is at stake, and has reaffirmed the clear and convincing standard for various types of civil detention." *Velasco Lopez*, 978 F.3d at 856 (citing *Addington*, 441 U.S. at 426, 432–33 (clear and convincing evidence for civil confinement of mentally ill individuals); *Foucha*, 504 U.S. at 75–76 (clear and convincing evidence for involuntary civil commitment); *United States v. Comstock*, 560 U.S. 126, 130–31 (2010) (clear and convincing evidence to confine a mentally ill, sexually dangerous prisoner beyond the date he would otherwise be released); *United States v. Salerno*, 481 U.S. 739, 751 (1987) (clear and convincing evidence for pretrial detention of an arrestee)).

This resounding authority in favor of placing the clear and convincing burden of proof on the Government is directly applicable to Petitioner's immigration bond proceedings here. Immigration proceedings are civil proceedings. *See Zadvydas*, 533 U.S. at 690. And it cannot be disputed that Petitioner's liberty is at stake. Indeed, he has been incarcerated and physically confined to the St. Clair County jail for sixteen months with no end in sight. It would be "improper to allocate the risk of error evenly between [Petitioner] and the Government when the potential injury is as significant as [Petitioner's] liberty." *Velasco Lopez*, 978 F.3d at 856.

17

The *Mathews v. Eldridge* balancing test supports this conclusion. The first factor to consider is Petitioner's private interest at stake. As explained, a person's liberty is of paramount importance in our due process jurisprudence. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas*, 533 U.S. at 690. Importantly, this right is "shared by citizens and noncitizens alike[.]" *Lopez-Campos*, 175 F.4th at 734. Supreme Court precedent is abundantly clear that "[n]oncitizens who have 'passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.'" *Id.* at 732 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

Respondents argue that Petitioner's liberty interest is limited because he has "no realistic chance of succeeding on appeal" of his removal order. ECF No. 8, PageID.86. As such, Respondents analogize Petitioner's situation to "criminal defendants who have already been convicted, which gives rise to a presumption of detention[.]" *Id.* Respondents' argument is inapt, however, because "[t]he proceedings at issue here are *civil*, not criminal, and we assume that they are nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690 (emphasis added). "[T[he deprivation of liberty" that Petitioner has experienced "is not the result of a criminal adjudication" with all its concomitant due process protections. *Soto-*

18

*Medina*, 817 F. Supp. 3d at 625. Instead, Petitioner is "experiencing the deprivations of incarceration, including loss of contact with friends and family, loss of income earning… lack of privacy, and, most fundamentally, the lack of freedom of movement"—for which the Government has had to prove nothing to secure. *Graterol Guedez*, 2026 WL 1696650, at *3.

It is also appropriate to analyze the length of incarceration when weighing the first *Mathews* factor. *See Soto-Medina*, 817 F. Supp. 3d at 625. "The longer the duration of incarceration, the greater the deprivation." *Velasco Lopez*, 978 F.3d at 852. It is true that removal proceedings "have an end point," and "the liberty interest of a noncitizen detained under section 1226(a) may therefore be slightly less weighty than that of individuals facing indefinite and prolonged detention. But only slightly less: The exact length of detention under section 1226(a) is impossible to predict and can be quite lengthy[.]" *Hernandez-Lara*, 10 F.4th at 29. As such, detention "can become constitutionally impermissible, even if the detention has a theoretical end point." *Lopez-Campos*, 175 F.4th at 734. This case is a perfect example: Petitioner has been incarcerated for sixteen months. The BIA has not re-calendared Petitioner's removal appeal even though DHS has been asking it to do so for over a year. *See* ECF No. 7-1, PageID.47 (DHS's March 16, 2026 follow-up request to re-calendar the appeal, which notes that the first request to re-calendar the appeal has been pending since March 13, 2025). Courts have found lesser periods of immigration

19

detention to be unduly prolonged. *See Velasco Lopez*, 978 F.3d at 855 (fifteen months of detention was prolonged and unconstitutional, requiring another bond hearing where Government bore the burden of proof); *Hernandez-Lara*, 10 F.4th at 29–30 (ten months of detention was prolonged and unconstitutional, requiring another bond hearing where Government bore the burden of proof).

Accordingly, the first *Mathews* factor favors placing the heightened burden of proof on the Government, which is in line with "the relative importance attached to the ultimate decision" on Petitioner's liberty. *Addington*, 441 U.S. at 423.

The second *Mathews* factor is the risk of erroneous deprivation of the private interest and the value of additional procedural safeguards. Requiring a detainee to prove his own non-dangerousness and non-flight risk abounds with risks of erroneous deprivation. "[I]t is no secret that proving a negative as to danger and risk of flight can be difficult if not impossible in some cases." *Soto-Medina*, 817 F. Supp. 3d at 626 (citing *Hernandez-Lara*, 10 F.4th at 31; *Elkins v. United States*, 364 U.S. 206, 218 (1960)). "Assigning this task to § 1226(a) detainees—who often experience language barriers, an inability to gather evidence, and other obstacles—exacerbates the risk of erroneous deprivation." *Castaneda-Castano*, 2026 WL 1223095, at *8. "On the other hand, the government is in a vastly superior position to access pertinent information" to support detaining an individual through removal proceedings. *Id.*; *see also Velasco Lopez*, 978 F.3d at 853 (noting the Government's access to

"numerous databases and to information collected by DHS, DOJ, and the FBI, as well as information in the hands of state and local authorities," and the Government's "broad regulatory authority" to obtain other information).

Moreover, in *Addington*, the Supreme Court acknowledged the value of increasing the burden of proof in the context of civil commitment proceedings for individuals with mental disorders. The Court noted that "[a]t one time or another every person exhibits some abnormal behavior," and a lower standard of proof creates the "risk that a factfinder might decide to commit an individual based solely on a few isolated instances of unusual conduct." *Addington*, 441 U.S. at 427. "Increasing the burden of proof is one way to impress the factfinder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate commitments will be ordered." *Id. Addington*'s conclusion is apt here: everyone engages in occasional questionable conduct at one time or another, and increasing the burden of proof will prevent detention of noncitizens who are not a *true* danger or *true* flight risk.

Respondents argue that there is no risk of erroneous deprivation because Petitioner received a full opportunity to present evidence in front of an impartial decisionmaker. ECF No. 8, PageID.87. Be that as it may, the burden of proof was placed on Petitioner and IJ Jebson clearly indicated throughout his bond opinion that

the burden of proof guided his decision. Therefore, this *Mathews* factor supports placing the heightened burden of proof on the Government.

The final *Mathews* factor is the Government's interest and the burdens that additional safeguards would impose. This analysis "ultimately entails an assessment of the public interest." *Hernandez-Lara*, 10 F.4th at 32. It cannot be doubted that the Government, and society in general, has a strong interest in ensuring that noncitizens do not abscond and that they do not commit crimes. *Velasco Lopez*, 978 F.3d at 854. Moreover, courts must "weigh heavily" the fact that "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)). However, Respondents have not "articulated an interest in the prolonged detention of noncitizens who are *neither dangerous nor a risk of flight*." *Velasco Lopez*, 978 F.3d at 854 (emphasis added). Indeed, "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest… in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id.* Unnecessary detention imposes substantial social costs by depleting the public fisc, tearing families and cultural groups apart, depressing the economy, and increasing the burdens on our social welfare systems that must pick up the slack. *Hernandez-Lara*, 10 F.4th at 33. "In short, given the risk that the current procedures lead to many instances of needless detention, entailing substantial social and financial costs,

22

the public interest in placing the burden of proof on the detainee is uncertain at best, and may well be negative." *Id.*

Respondents argue that imposing the burden of proof on the Government would be an "enormous burden," but do not explain why. ECF No. 8, PageID.87. As mentioned, the Government has dozens of databases and resources at its fingertips to quickly and easily obtain the needed evidence to prove dangerousness and risk of flight before an immigration judge. "[S]hifting the burden imposes minimal additional hardships on the government." *Castaneda-Castano*, 2026 WL 1223095, at *8. And "any additional hardships… are outweighed by the reduction in the risk of erroneous[] depriv[ation]." *Id.* This final factor also favors placing the heightened burden of proof on the Government.

Respondents' argument against shifting and heightening the burden of proof is not compelling. At bottom, Respondents argue that the due process protections of noncitizens are coextensive with the procedures provided by the legislature and executive, and since Petitioner's bond hearing occurred according to these procedures, his due process rights were not violated. ECF No. 8, PageID.83–84. But Respondents' authorities for this proposition are inapposite. Two of Respondents' Supreme Court cases pertain to noncitizens who had not yet entered the United States. *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (noncitizen who made it 25 yards into U.S. territory had not effected an entry

and was not treated as someone already present in the U.S.); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543–44 (1950) (noncitizen who was denied entry is only entitled to the process due under the laws enacted by Congress). These cases merely reinforce "our longstanding understanding that noncitizens 'on the threshold of initial entry stand[] on a different footing' than those who have 'passed through our gates.'" *Lopez-Campos*, 175 F.4th at 733–34 (quoting *Mezei*, 345 U.S. at 212). They do "not control where, like in the instant case, noncitizens have resided within the United States for years." *Id.* at 734.

Respondents also cite *Carlson v. Landon*. The noncitizens in *Carlson* were detained under the Internal Security Act, which required Communists to be detained without bond pending deportation proceedings. 342 U.S. 524, 528–29 (1952). The Supreme Court upheld their detention without bond "by reference to the legislative scheme to eradicate the evils of Communist activity." *Id.* at 543. In enacting the Internal Security Act, Congress had found that Communists presented a "clear and present danger" to the United States because of their propensity for the use of force and violence. *Id.* at 531 n.21. *Carlson* is distinguishable because the Supreme Court deferred to Congress's "specific findings as to the dangerousness of a class of noncitizens, and those findings were found to have justified the detention of noncitizens even in the absence of individualized determinations as to danger and flight risk." *Hernandez-Lara*, 10 F.4th at 36 (discussing *Carlson*). Here, "no similar

24

findings regarding dangerousness or flight risk have been made as to the class of noncitizens detained under section 1226(a)." *Id.* "Indeed, to the extent *Carlson* references burdens of proof, the Court explained that the Attorney General does not have 'untrammeled discretion as to bail,' but rather '[c]ourts review his determination' and '*he must justify his refusal of bail.*'" *Id.* at 36–37 (quoting *Carlson*, 342 U.S. at 543) (emphasis added).

Respondents' other authorities have nothing to do with immigration detention or burdens of proof. *See Lopez v. Garland*, 990 F.3d 1000, 1003 (discussing the adequacy of written notice of removal proceeding); *Abdallahi v. Holder*, 690 F.3d 467, 472 (6th Cir. 2012) (discussing the adequacy of a removal hearing where the original immigration judge had retired and a new immigration judge was presiding over the case); *Denko v. I.N.S.*, 351 F.3d 717, 726 (discussing the constitutionality of allowing the BIA to issue a summary affirmance without a separate opinion); *De Leon Trejo v. Bullock*, No. 26-5186, 2026 U.S. App. LEXIS 14050, at *6 (6th Cir. May 14, 2026) (discussing whether the immigration judge's hearing was real, not "a sham or a pretense").[7]

---

[7] Respondents cite one unpublished Sixth Circuit case from 2000 that, although not identical, touches closest to the issues here. The Sixth Circuit found that the Government can detain excludable aliens indefinitely under 8 U.S.C. § 1231(a) when prompt deportation is not practicable. *Betancourt v. Chandler*, No. 99-5797, 200 WL 1359634, at *2 (6th Cir. Sept. 14, 2000). However, a year later, the Supreme Court found indefinite detention under § 1231(a) so constitutionally suspect that it wrote in an implicit 6-month detention limitation into the statute. *See Zadvydas*, 533 U.S.

Ultimately, although "[d]etention during removal proceedings is a constitutionally permissible part of that process," *Demore v. Kim*, 538 U.S. 510, 531 (2003), the Government's "power to detain immigrants pending removal 'is subject to important constitutional limitations.'" *Hernandez-Lara*, 10 F.4th at 28 (quoting *Zadvydas*, 533 U.S. at 695). The liberty interest in freedom from bodily restraint is "shared by citizens and noncitizens alike" and "protected by the Due Process Clause[.]" *Lopez-Campos*, 175 F.4th at 734. The risk to this liberty interest is intolerably high without requiring the Government to prove by clear and convincing evidence that a noncitizen is a danger or a risk of flight.

Therefore, due process requires the Government to bear the burden of proving a noncitizen's danger or risk of flight by clear and convincing evidence at the immigration detention bond hearing.

---

at 699, 701; *see also Rosales-Garcia v. Holland ("Rosales I")*, 238 F.3d 704, 715, 715 n.16 (6th Cir. 2001) (rejecting *Betancourt*). In *Betancourt*, the Sixth Circuit also found that a noncitizen "has no constitutional right to due process" and that "[e]xcludable aliens are entitled only to those due process rights provided by law, not the Constitution." *Betancourt*, 2000 WL 1359634, at *2. This holding has been resoundingly rejected by later Sixth Circuit case law. *See Rosales-Garcia v. Holland ("Rosales II")*, 322 F.3d 386, 409 (6th Cir. 2003) ("We could not more vehemently disagree. Excludable aliens—like all aliens—are clearly protected by the Due Process Clauses of the Fifth and Fourteenth Amendments."). *Betancourt* is simply not good law.

b. <u>Step 2: Prejudice</u>

The next question is whether Petitioner was prejudiced by the due process violation. To prove prejudice, Petitioner must show that the facts of this case "could have supported a different outcome" if the correct burden of proof had been placed on the Government. *Mendoza-Garcia v. Barr*, 918 F.3d 498, 508 (6th Cir. 2019) (quoting *Sako v. Gonzales*, 434 F.3d 857, 864 (6th Cir. 2006)); *see also Jashari v. Sessions*, 722 F. App'x 481, 493 (6th Cir. 2018).[8]

The Court concludes that Petitioner was prejudiced. IJ Jebson emphasized throughout his bond opinion that *Petitioner* failed to demonstrate that he is not a danger to the community. ECF No. 8-11, PageID.150. In other words, IJ Jebson's opinion was closely guided by and hinged on the burden of proof. Moreover, IJ Jebson's opinion rested largely on Petitioner's inability to (in his opinion) credibly explain himself and rebut the firearm application evidence. *See id.* Because IJ Jebson put the burden of proof on Petitioner, IJ Jebson did not have the occasion to consider

---

[8] In *Mendoza-Garcia*, the Sixth Circuit noted that it has been inconsistent in the language it has used to describe the prejudice standard. *See Mendoza-Garcia*, 918 F.3d at 508 n.2 (noting that it has also described prejudice as an error that leads "to a substantially different outcome."). The Sixth Circuit concluded that, to the extent these two framings conflict, the more permissive articulation of prejudice from the *Sako* case controls. *See id.*; *see Sako*, 434 F.3d at 864 (holding that there is sufficient prejudice if the claims *could have* supported a different outcome). The court also noted that the more permissive articulation of prejudice is more consistent with the prejudice standards used by other circuits and with prejudice requirements in other contexts. *See Mendoza-Garcia*, 918 F.3d at 508 n.2.

27

the weight of the firearm application evidence on its own and whether the firearm evidence could reach the clear and convincing evidence standard for dangerousness. The facts here "could have supported a different outcome" if the correct burden of proof was applied.

Therefore, Petitioner was sufficiently prejudiced to state a due process claim. For this reason, he is entitled to habeas relief.

## B. Other Claims for Relief

Although Petitioner's burden of proof argument is sufficient to resolve this case, the Court briefly addresses Petitioner's other arguments, which are easily discarded.

First, Petitioner raises a claim that his arrest was in violation of the Fourth Amendment because he was arrested without a warrant. ECF No. 7, PageID.39. "However, even if the Court assumes that a warrant was required for Petitioner's arrest, the failure to acquire a warrant alone does not entitle Petitioner to release in this § 2241 action." *Mondelus v. Raycraft*, No. 1:26-cv-1206, 2026 WL 1141136, at *2 (W.D. Mich. Apr. 28, 2026). As explained in *Mondelus*:

> In the immigration context "an unlawful arrest does not automatically result in suppression of evidence." *Gabriel v. Hermosillo*, No. 2:25-cv-02594-DGE-GJL, 2026 WL 194233, at *5 (W.D. Wash. Jan. 26, 2026); *see also INS v. Lopez-Mendoza*, 468 U.S. 1032, 1051 (1984) ("We hold that evidence derived from [an unlawful arrest] need not be suppressed in an [immigration] civil deportation proceeding."). The Sixth Circuit has acknowledged that *Lopez-Mendoza* established that a defendant,

28

including his identity or body, is properly before a court "regardless of whether this information was obtained in violation of his Fourth Amendment rights." *United States v. Navarro-Diaz*, 420 F.3d 581, 588 (6th Cir. 2005). Thus, "the 'body' or 'identity' of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Lopez-Mendoza*, 468 U.S. at 1039. Therefore, "once deportation proceedings have begun[,] the legality of the alien's detention" based on the absence of a warrant "can no longer be tested by way of a habeas corpus proceeding." *Arias v. Rogers*, 676 F.2d 1139, 1143–44 (7th Cir. 1982).

*Id.* Therefore, Petitioner's Fourth Amendment claim is meritless and is not a basis for him to seek release from custody under § 2241.

Second, Petitioner raises a statutory claim that the Immigration and Nationality Act must be construed to avoid serious constitutional problems. ECF No. 1, PageID.6. In the Court's order requiring supplemental briefing, the Court informed Petitioner that the claim was deficient and ordered Petitioner to support it with facts and law. ECF No. 6, PageID.31–32. The Court further informed Petitioner that failure to satisfactorily support the claim would result in dismissal. *Id.* at PageID.34. Nevertheless, Petitioner did not even mention this claim in his supplemental briefing. The Court considers the claim forfeited.

Third, Petitioner argues that the firearm application was "a legally insufficient basis for a danger finding." ECF No. 7, PageID.42. But as the Court has already explained to Petitioner in its order requiring supplemental briefing, "the Attorney General's exercise of his or her discretion in making a bond determination regarding

29

aliens detained pursuant to § 1226(a) is not reviewable by this Court." *Naresh v. Klinger*, No. 2:19-cv-12800, 2019 WL 5455469, at *2 (E.D. Mich. Oct. 24, 2019); *see* 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). The Court cannot second-guess an immigration judge's discretion. This argument is meritless.

Fourth, Petitioner argues that he did not receive a custody determination within 24 hours, which violated his due process rights. ECF No. 7, PageID.41. As an initial matter, the regulations require a custody determination within 48 hours, not 24. 8 C.F.R. § 287.3(d). Regardless, this argument is plainly contradicted by the record, which demonstrates that DHS rendered a custody determination on the same day as Petitioner's arrest. ECF No. 8-8, PageID.140. Accordingly, this argument is meritless.

Finally, Petitioner argues that his immigration lawyer's performance at the bond hearing constituted ineffective assistance of counsel and violated his Fifth Amendment Due Process rights. ECF No. 7, PageID.42. However, the Sixth Circuit has expressly rejected the notion that a noncitizen has a Fifth Amendment right to effective assistance of counsel at immigration hearings. *Al-Saka v. Sessions*, 904 F.3d 427, 434 (6th Cir. 2018) ("The Fifth Amendment simply does not guarantee the

right to counsel or, it follows, the right to effective counsel in removal proceedings.").

## C. Proper Respondents

Respondents argue that only Petitioner's immediate custodian is the proper respondent in this case, so the other respondents named in the Petition must be dismissed. ECF No. 8, PageID.90–92. Respondents contend that either the warden of the St. Clair County jail, or the ICE District Director, would be the proper respondents. *Id.* at PageID.92.

In *Rumsfeld v. Padilla*, the Supreme Court held that "there is generally only one proper respondent to a given prisoner's habeas petition," and that "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." 542 U.S. 426, 435 (2004).

However, *Padilla* sidestepped any definitive ruling about how the immediate custodian rule operates in the immigration detention context. *See id.* at 435 n.8. Sixth Circuit case law, which was not affected by *Padilla*'s holding, *see Cid-Barrios v. Raycraft*, 814 F. Supp. 3d 839, 845 (E.D. Mich. 2025), states that the "INS[9] District

---

[9] INS, the Immigration and Naturalization Service, was replaced by the Department of Homeland Security in 2003, which itself is divided into three subgroups: USCIS, CBP, and ICE. *See* U.S. Citizenship and Immigration Services, *The Homeland Security Act*, https://www.uscis.gov/i-9-central/form-i-9-resources/handbook-for-employers-m-274/10-why-employers-must-verify-employment-authorization-and-

31

Director for the district where [the petitioner] is being detained… [is] the proper respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). The Sixth Circuit explained that the District Director is the proper respondent because he is a noncitizen detainee's "immediate custodian." *Id.* at 322; *see also id.* at 320 ("[A]lthough the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners.").

In *Roman*, the Sixth Circuit seemingly rejected the idea that more than one respondent could be named in a noncitizen's habeas petition. *See id.* at 321 ("Section 2243 states that a writ of habeas corpus 'shall be directed to *the* person having custody of the person detained,' which suggests that only one individual can properly be named as the respondent to a habeas corpus petition."). However, the Sixth Circuit held that a higher supervisory official, like the Attorney General, could be the proper respondent to a habeas corpus petition under "extraordinary circumstances… necessary to preserve a person's access to habeas corpus relief," such as where immigration authorities exercised their power to transfer a detainee out of district "in a clear effort to evade an alien's habeas petitions." *Id.* at 325–26.

---

identity-of-new-employees/11-the-homeland-security-act (last visited Apr. 30, 2026). The "INS District Director," as stated in *Roman*, is the equivalent of an ICE District Director today.

32

Here, no extraordinary circumstances exist. There is no indication that naming a more remote supervisory authority is necessary to preserve Petitioner's habeas rights. In line with *Roman*, therefore, Kevin Raycraft, the Director of the ICE Detroit Field Office, "is the proper respondent to be named" in this habeas petition. *Cid-Barrios*, 814 F. Supp. 3d at 845. All other Respondents are dismissed.

## IV.   CONCLUSION

For the foregoing reasons:

1. **IT IS ORDERED** that Petitioner Jose Guadalupe Jaimes' Petition for Habeas Corpus [ECF No. 1] is **GRANTED.**

2. **IT IS FURTHER ORDERED** that Respondent Kevin Raycraft (1) shall provide Petitioner with a new individualized bond hearing under 8 U.S.C. § 1226(a), *before a different Immigration Judge*, **within ten (10) days of the date of this Order;** or (2) shall release Petitioner if the hearing is not held within ten (10) days.

3. **IT IS FURTHER ORDERED** that at the hearing, **the Government shall bear the burden of proving by *clear and convincing evidence* that Petitioner is either a danger to the community or a flight risk.**

4. **IT IS FURTHER ORDERED** that Respondent Kevin Raycraft shall file a status report within five (5) days of Petitioner's hearing or release, certifying compliance with this Order. The status report shall inform the

33

Court whether and when Petitioner was released from detention or provided with a bond hearing under 8 U.S.C. § 1226(a). If the bond hearing does occur, the status report shall also include the identity of the presiding Immigration Judge, whether bond was granted or denied, and if denied, the reasons for denial.

5. **IT IS FURTHER ORDERED** that all Respondents except Kevin Raycraft are dismissed from this action.

**IT IS SO ORDERED.**

Dated:  July 14, 2026

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge